Oh yay, oh yay, oh yay, all persons having any party, manner, or forms of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, first case we're going to take up is United States v. Mitchell and Mr. Cook will hear from you. May it please the court, I'd like to begin with the issues that were especially important to my office deciding to bring this appeal, which are the district court findings on good faith that were made sua sponte. The district court's central determination was under Franks, but in this case the government never asserted a good faith defense. The defense never requested a Franks hearing. The defense never made a preliminary showing on Franks. Did you ask us to reverse on that basis or just on the Jardines basis? We've asked that you vacate the findings on good faith because they were made sua sponte and beyond the scope of what green law permits the court to raise on its own. What if we vacate based on the curtilage issue? Does that solve the problem? I think it does. I mean, we wanted it to be clear that for purposes of future cases that those findings were on good faith made improperly and wouldn't be impeachment material because they were not reached procedurally in a correct fashion. But I think that in terms of what would happen in the judgment in this case, certainly if the court concludes that there wasn't a curtilage here that was entered, then that by itself would suffice to reverse because you wouldn't, again, have any reason to reach good faith. And is it really a curtilage question? I mean, isn't it more whether the officer passing a door and using his nose to smell whether it be marijuana or a freshly baked cherry pie is a search? I agree. I think that you could in a sense say, look, we don't even have to decide whether there was a curtilage here because a sniff is not a search. A sniff by an officer. It is not. And therefore, the officer didn't do anything that you can't do either as a private citizen or as an officer in approaching a door. Your theory is a sniff is the same as plain view. You use your eyes, you use your nose. And if you're in a public place or an authorized place and you smell illegal substance, then you now have probable cause. That's correct. And as Judge Zinnes had pointed out, I think that that solves the case even without deciding the curtilage issue. But in our view, the curtilage determination is also incorrect on the facts of this case. And I think that the factors on the curtilage provide some further guidance here that are important. For example, although proximity here is very close, and Brisa, this case, this court has said that the proximity of the area to the home must be considered in light of the other done factors. And the other done factors here, I think the second one is particularly informative, which is whether the area is included in an enclosure surrounding the home. And in Hardeen's, the Supreme Court noted that the boundaries of the curtilage are generally clearly marked. Dunn described this as an area where the activity of home life extends and also described in that case a fence as demarking a specific area. And Brisa referred to a curtilage being clearly demarcated. And what all of these, I think, are helping to indicate is that the curtilage concept needs to be something that is clear and administratable. And an unspecified number of inches outside of a window where the siding of a building changes from brick to shingles and abuts a public walkway, just simply doesn't give any kind of sufficient indication to a police officer about when you're entering into a zone that is the curtilage and when you're not. But isn't it, again, we would be reaching further than we need to if we have to reach the curtilage issue. Because I was just thinking as we were talking, I was thinking about a hypothetical. Say an officer is coming by to inform the apartment dweller of a police activity down the street. And they approach, as they can, a door, and it's curtilage, no doubt. But then the officer smells marijuana. The curtilage question is beside the point, is it not? I agree. And, I mean, another, I think, good example of the point Your Honor is making is, you know, suppose you live in a multi-unit building and you're walking down the sidewalk and you smell smoke. And maybe you're not as knowledgeable about whether this is, you know, marijuana or just some other kind of smoke. And so you decide to knock on the door. But before you do that and bother the person, you're like, well, you know, I'm going to make sure that I think there's actually a smell of smoke here before I say, hey, maybe you've got a fire in your apartment. Nobody would think that that is anything that violates any kind of property-based norm. That would be a completely understandable and accepted kind of implied license in the language of the Supreme Court in Hardeen's. Which is precisely what the officers did here, right? They smelled the marijuana and then they knocked on the door. That's correct. And I think what the officers did here, in fact, was desirable incremental approach. They're in the general area, they smell marijuana from the parking lot in the grassy area, which they're clearly permitted to do. They then try and isolate the smell by, not by knocking on every door, but by just walking through the general area. As one of the police officers testified, that he didn't even approach a window upstairs, that was Officer Lyons at page 56 of the appendix, because he didn't smell it up there. And so then they narrow it down to what they think is the appropriate apartment. And before they knock on the door there, they lean in and confirm where the smell is coming from. And then at that point they knock on the door. Rather than going to get a warrant, which they maybe could have done, but as the Supreme Court said in King, sometimes it's better to have a conversation with someone and see if you can dispel the whole issue. And so they took that approach. Indirectly, the necessity to address cartilage or cartilage question itself, that what the officers did in this case was something any and everybody could do with impunity at that location. I agree with that. I think that that is entirely true. And certainly we're not asking this court to reach any unnecessary issues. We are concerned about the findings on good faith because of their relevance to future cases. And we don't think that they should appropriately be impeachment material in the future. But in terms of resolving the legal issues in this case, I don't think it's necessary for this court to make a determination on cartilage. You can say that this falls within the scope of an implied license. We're certainly not waiving any kind of argument here about the cartilage. But I don't think it's strictly necessary to decide that in order to reverse in this case. Also an issue raised by the appellee is the defendant with regard to the Virginia medical marijuana statute, which I do not think the district court addressed. Is there any barrier to this court addressing that as a matter of law? I don't think so. I mean, the defendant certainly argued that point below. And it is a question of law, essentially. And so I think that it's one that has been presented fully, unlike the good faith issues, and is ripe for adjudication. So I would say that that is before this court. And I think that it is not a basis for affirming, because in this case, it's a matter of law. I mean, whether you could ever defeat probable cause by saying medical marijuana would probably depend on particular facts. This case is especially unpersuasive. Why would it depend on the facts? Is there some exception in the statute that provides for it? I think if somebody said, here is my prescription, that could be a different case. That's all I meant by that. But in this case, I mean, it's telling. I think when you follow the recording in a government's Exhibit A, the defendant at the time offered really two explanations for the marijuana smell. The first was that he said... And then toward the very end of the recording, he acknowledged that smoking marijuana remains illegal in Virginia. So this was not a case, I think, that is a persuasive one to recognize that probable cause was defeated on these facts. And so I don't think that there's a basis for saying that the possibility of having a valid medical marijuana prescription would defeat probable cause here. And the Supreme Court's opinion in Baker v. McClellan, I think, aptly captures the basic principles under the Fourth Amendment that under probable cause determination, you don't have to have resolved every possible defense, removed every possible doubt. And that should apply particularly in a case where, at this point, the defendant has never presented any evidence of or explanation for how he would actually fall within this medical marijuana exception. Thank you, Mr. Cook. If the Court has no other questions, I'd ask that the Court reverse and vacate the findings on good faith. Mr. Hobbs. Can I ask you just, it was the first point the government raised was the good faith ruling made by the Court. Yes, Your Honor. What precipitated that? I believe the Court's approach to that, again, is having found the curtilage in that area was violated under Fourth Amendment purposes. I believe the Court then addressed the good faith issue because... Had anybody ever raised it? No, it was never raised. I'm looking at the affidavit here, and I'd be happy to have you point out what statement in the affidavit is false. I mean, they talked about how they smelled it, where they were, how they confronted the person, and they are asking for a warrant to go inside the apartment. And, Your Honor, I don't believe the Court addressed that it was a false statement that was made. I think it was more of a reckless disregard as to what was left out and how that smell was determined. And the reason why I believe the District Court does even take up that issue is because it was not a... Officer Marshall rode past apartment A6 when he detected the odor of marijuana coming from the apartment. That's totally accurate and complete and sufficient for probable cause, isn't it? Well, Your Honor, I don't believe that would be completely sufficient for probable cause. Why? Because we're talking about an odor in an area that's a high-crime, high-drug area where the officers... Well, no. You smell marijuana coming from an apartment. You have probable cause to believe there's marijuana in there. Well, again, Your Honor, when we're talking about an apartment complex where we have doors... Is that for the judge to decide? I mean, the statement is an accurate statement. Both officers, one was on the bicycle in the grass and the other was on the sidewalk. And the one on the sidewalk, Marshall said it was a strong odor of marijuana. And then they spent some time being sure it came from A6. They went to the next one down, the next door down, and they went to the second floor. And they confirmed it by smelling it at the window and smelling it at the door. But they smelled it, a strong odor, even before they did all that. And that's all he stated here. And the judge then made a judgment that that's enough probable cause. My point is it appeared to me, and that's why I asked you what prompted it. It's totally gratuitous for the district court to have concluded that this was done in bad faith. Well, Your Honor, I believe the court was addressing that because the court had already found that there was a Fourth Amendment violation. And, therefore, the next step that the court would take would be whether or not exclusion is appropriate. And I think that's why the court was addressing that. What authority, though, did the district court have to do that? It's not an issue raised by anybody. Nobody's asked. Your client didn't ask for a Franks hearing. That's true. So what is the district court's authority to proceed without having given notice to the parties, not having been an issue, and without having a request for a Franks hearing? What's the authority of the district court to do what it did? I believe the court is doing an analysis under United States v. Leon, which is separate from a Franks hearing. I understand that. But a district court just can't launch off into any direction it wants to go. What is its authority to have conducted this sua sponte, ex parte examination? And, again, Your Honor, I believe it's because the court had already found this Fourth Amendment violation. And so it was just determining whether or not the exclusionary rule was appropriate to use at this stage, because the court could have very well found that there was a Fourth Amendment violation, but then would have found that the officers operated under good faith and, therefore, was not going to exclude the evidence. And I think that's just a natural step. We see it in other cases where the court might find that there was a Fourth Amendment violation. However, this evidence is still going to come in because there was good faith. Have you had any other cases? Or can you cite us to a reported case where there's a sua sponte Leon determination? I believe the Eighth Circuit case that the United States brought up in Burstyn was a situation exactly like this one, where there was found to be a Fourth Amendment violation, and then the court addressed whether or not good faith should then exclude the testimony. I think it's one thing for the court to find the Fourth Amendment violation, but then it's a natural step for a court to then judge whether or not exclusion is appropriate, because under U.S. v. Leon, not every time the Fourth Amendment is violated is it appropriate to exclude evidence. But this wasn't a situation where the district court said, there's a Fourth Amendment violation. I'm going to excise that information from the warrant, and then I'm going to make an independent determination as to whether there is probable cause without the constitutional information. That's one way to go. She actually made credibility determinations and suspicious credibility determinations, in my view, because she ultimately found that she was very troubled by the officer's testimony, yet the officers at no point had the opportunity to directly address the district court's issues. Isn't that the problem with, as my colleagues just pointed out, a sua sponte grab of the Leon and Franks issue, more particularly? And, Your Honor, here the officers were at the hearing. Both of them testified. The government had direct examination of those officers. Only as to the legitimacy of the sniff, so to speak. That was the issue at the hearing, correct? That is true, and I believe the government did not choose to argue that they had, that if it works, found to be a Fourth Amendment violation, that the government then would allow it. But it's not the government's burden. It's your burden. You have to make a substantial showing that the officers either lied or were reckless in the information they provided the court when they're paying the warrant. And that is, of course, if this had gone a different route, had the court determined that the Fourth Amendment violation was met, and then they had determined that the court could have at that point said, but I'm still going to allow this evidence to come in because I believe the officers operated under good faith. And, again, that is not something that I think is really uncommon to do for a district court judge to say, I think it was a Fourth Amendment violation. However, under U.S. v. Leon, there was nothing that exclusion wouldn't, the purpose of exclusion wouldn't remedy the situation. Because, again, exclusion is not something that is there to protect wrongdoers. It's there to deter police conduct. And when the district court who was, in this case, taking the evidence, listening to the officers' testimony, observing their conduct. You know, your argument has some rationale, reasonability about it, but, reasonableness. But the court went on to find that these officers deliberately misled the magistrate by deliberately omitting material things. When all they said is they went by the apartment and they smelled the strong odor of marijuana and, therefore, suspected that marijuana was in the apartment. And she omitted all the evidence of the officers that talked about how they, 10 to 15 feet away, they smelled it. The other guy was only four feet away and he smelled it and he called it a strong odor. And how they excluded other areas. And then they did also go to the window and did go to the door. And if those were violations, what does she do with the rest of the evidence? What she does is she excludes that and then say the officers who testified candidly about how they did it. And she didn't find that incredible. And she said they misled the officers. They misled the magistrate. And, again, I believe that the court was attempting to explain that I do find a Fourth Amendment violation. And then also took the step to say, and I don't think that there was good faith here. Again, I don't think it was inappropriate for the district court judge to make a good faith determination because oftentimes when a Fourth Amendment violation has occurred, again, sometimes exclusion is not the appropriate remedy. And I think that was merely what the district court judge was doing, was determining whether or not the remedy for what she determined to be the Fourth Amendment violation, if exclusion should be used. Tell us why we have a search here. Well, Your Honor, I think if we go back to Yarden's case, and as Justice Scalia pointed out in that case, the search is based upon the officer's purpose in being there. The officers were there trolling for evidence outside of a bedroom window and outside of the front door. And that is the – In a common area. Your Honor, again, if I could – It's the opposite. They weren't trolling for evidence. They were patrolling the whole area and the evidence that came upon them. They smelled the marijuana and then tried to pursue the source. Yes, and to locate – That's not trying to bait somebody or going in and seeking to see if a crime is being done. They already had probable cause to believe a crime was being committed. In the area, and I believe – More than the area, in apartment A6. And I think they made that determination, and what the district court was ruling was that they made that determination by localizing where the smell was coming from. They had already determined that earlier. I believe if the court would look at Officer Marshall's cross-examination, there was a question – I read the whole transcript. And I understand. I just wanted to point out that there is a moment when, under cross-examination, he was asked, why did you go to the door? And his response was to pinpoint the location of the smell. In fairness to the Supreme Court's precedent, Jardines was about using, just like in Kilo, enhanced technology, whether it be a dog or an infrared machine, right? There's some more fundamental precedent that this court didn't consider, which, if we extend, if we affirm, we're now running headlong into the Supreme Court's earlier precedent. And what I'm referring to is Taylor and Johnson from 1932 and 1948, both of which affirmed that an officer, in the case of prohibition, smelling whiskey coming from a garage, or in the case of opium burning from, we've all heard it in law school, the hotel room, that those were both smells that an officer detected, by good police work, going up to, literally, the nose to the garage, or the nose to the door, smelling. And that was probable cause, according to the Supreme Court. What the Supreme Court found troubling was then the officers didn't get a warrant. The officers here got a warrant. So how do we affirm and not run headlong into bedrock precedent? I believe the majority opinion in Jardines did actually address this issue, because it was raised in the dissent and then in the footnotes to the majority's opinion, just as Scalia does point out. And if I could read directly from that footnote, the dissent insists that our argument must rest upon the particular instrument the Detective Bartlett used to detect the odor of marijuana, the dog. It is not the dog that is the problem, but the behavior that here involved use of the dog. We think a typical person would find it cause for great alarm to find a stranger snooping about his front porch with or without a dog. And again, Justice Scalia's whole argument or holding in Jardines is that it's the purpose that the officer is there for. He is there looking for evidence. It's not a situation I believe he used. Justice Kagan's concurrence that a human sniff is not a search, we can all agree. But Justice Kagan's concurring opinion, she was addressing a different rubric. As she said, the court got to that opinion under a property-based rubric that Justice Scalia drafted his majority opinion on. The concurring opinion in Justice Kagan, she said we could have just as easily in this case got there based off of a privacy-based analysis. And then she went on to do that privacy-based analysis. So let me understand your argument. Your argument is that Justice Scalia in Jardines, where the facts of that case were using a trained narcotic detection dog, expressly overruled Taylor and Johnson? Well, Your Honor, I think this case, and as the hypothetical that Your Honor used earlier with the government, I think that under Jardines' case that what happened in this case still fits. It dovetails completely because I think this was addressed by Justice Scalia in Jardines when he said it's not the dog, it's not the technology. Because that's what the dissent was trying to make a big point of was that this is just dog enhanced smelling. And what Justice Scalia was saying is that, no, it is the purpose that while the officers were there, they were there patrolling for evidence outside of a protected area, which is this curtilage. That when the officer, as the hypothetical that you used, if they happened to be in the area knocking on doors to inform them of something that was going on further down the street, their purpose was there not to look for evidence. They happened upon, if they happened upon evidence while they're there doing a normal function, then okay. So the implication, though, of your argument, if we extend Jardines in this way, is that officers can't patrol an apartment complex, smell marijuana, and be able to get a warrant for it? Do they have to get a warrant to get permission to smell? No, Your Honor. That's not what I'm trying to allude to. What I'm alluding to is that all we have here is just an odor of marijuana. And where it's coming from, I think, especially in this location, which the officers testified to, was a high-drug, high-crime area where they had found drugs in stairwells, where it was not uncommon for them to make many multiple drug arrests in this area, in this apartment complex. That based upon just this odor from where they were, that is why they went to the window and why they went to the door. And when they're at that window and at that door extracting... But that's my question, is what's the practical effect? What should they have done differently? They're there, they smell marijuana, they rule out other areas, they move in, right, to make sure they're at the right apartment. You contend that the district court was correct that by the moving in of the nose toward the door is a search. What practically do they do to avoid what you contend is the problem? I think any police work at that point, any observation of any type of activity, as in several of the other cases where there was involved dog sniffs, were all based off of either there was some type of informant, maybe a wife coming out and explaining that he has drugs inside of the house, where officers observed high rate of flow of traffic, incoming and outcoming. I mean, all of those questions were asked. Tell us what they should have done in your view. They've localized the odor. I thought you just told Judge Genis that they didn't have to get a warrant to get closer in order to take a confirming sniff. What do you say they were supposed to have done at that point? I think if they wanted to figure out whether or not there was marijuana inside of this house, then I think they could have absolutely done what was done in several of the other cases, whereas they now start to observe this building, to observe whether or not there is any kind of other indicia of drug-related activity going on whatsoever, because all they're using to determine is a human sniff. And even these two officers described the odor of marijuana differently, how they perceive it. So we're talking about an odor that is in the air that one officer said it smells very similar to a sweet-tasting smell. They both stated they both recognized the smell of marijuana, and they have smelled it in the past, and they were both familiar with it, and they both came up with the conclusion that marijuana was the odor independently. And they both stated here, I'm right here in this testimony, they said that after they smelled it from 15 feet away, the next steps that I did then was to try to follow it more to the center of that odor. And once I found it, we went to the adjacent apartments just to rule out any of those apartments as well. It was only after that that they wanted to confirm further. They weren't searching for the evidence. They were trying to confirm what they had already had probable cause about. They went to the windows and doors. And, Your Honor, in order for them to confirm that, they did get... Well, that's arguable. That's arguable. But I'm saying I'm not sure that's even relevant when they have already identified the apartment. They've excluded the other apartments. Both of them smelled marijuana, one from four feet away, the other from 15 feet away. They narrowed it down to that apartment, going upstairs and going to the one right and left. And then one went to the window and the other went to the door. Now the question is, do they have probable cause? Set aside the window and the door. Did they have probable cause to conclude that marijuana was being smoked in A6? And, again, I believe that the officers... The question is, did they have probable cause to believe it was in A6? In this particular circumstance, in this particular apartment complex, I don't know that they had probable cause at that point. Why not? Because they have found so many drugs before in the stairways and other locations. They went in the stairways and excluded the stairways. He said that explicitly. They went upstairs and excluded upstairs. They went to the next apartment down and excluded it from there. This is all before they went to the windows and doors. And then, sir, they knocked. They knocked on the door. Is the knock a violation of the Fourth Amendment? Your Honor, again, I go back to the Jardins case where Justice Scalia totally addressed this issue, where if the purpose of the knock is because they're there knocking because there was police activity further down the street and they're there to inform someone and then they detect this odor of marijuana, then okay, I think the officers are fine there. Are you running into another precedent, which is Wren, which is now we're taking into account the subjective intent of the officers? No, Your Honor. I think, again, if we look at Jardins closely, it is, again, their purpose is whether or not the purpose was there to troll for evidence. I mean, in this — You keep using that. Justice Scalia was upset by looking for evidence that the officers didn't have,  In this case, they weren't looking for crime. They already had probable cause. They were not trolling for evidence. They were trying to confirm what they had already observed. Your Honor, in Jardins, that case, prior to bringing the dog to the porch to sniff, there had already been informants that had told the officer — Was that probable cause? I don't believe it was. That's why the officers are doing — But I just disagree with the court then, I guess, on that point. Because — An officer going by — let's just lay out the facts that exclude the window and door sniff. The officers smell — two officers independently and simultaneously smell marijuana. They both — one says it's a strong odor of marijuana. The other said, I smell it. They then excluded the stairwell. They exclude the upstairs apartment. They exclude the next-door apartments. And at that point, conclude it came from A6. Is that probable cause? Your Honor, still, I'm having difficulty acknowledging — Accept my facts, and then — If I accept your facts as they are, which, again, is not what happened in this particular case, but if I accept those facts, then, yes, I guess there would be probable cause. Well, he says here, I'm looking at pages 54 and 55. He describes in detail what they did after they first smelled it. And what they did is they went to these other apartments first to exclude those areas. Anyway, that's a matter of what the record shows. And that wasn't accounted for in the district court's opinion, all that evidence. What was it the district court did is made an assessment of whether smelling at the window and smelling at the door was a Fourth Amendment violation. And that is a separate issue, I think. And the question is, do we need to reach it? And you say we do need to reach it because you say they didn't have probable cause before then. Isn't that what you're arguing? Your Honor, I apologize. That last part, you're saying that — I don't know that they had probable cause at that point, based upon this area. I mean, if that's your argument, if they didn't have probable cause by smelling the odor from a particular location in an apartment, I'd like to know what more they needed to have that probable cause. I believe in a whole list of cases where we're talking about searches and not only — Not searches. I'm not talking about searches. I'm talking about an officer smells marijuana coming from a location. He's walking in a parking lot at Walmart, and he smells marijuana coming out of the window of a car. Understood. Is that probable cause, that the law is being violated in that car? Yes. Okay. That's where I wanted to get to. Yes, Your Honor. I would acknowledge there would be probable cause there. All right. And I know I've exceeded my time, and I'm sorry. No, it's important to get to that, and you've made good arguments. Thank you. All right. Mr. Cook. Thank you, Your Honor. I had one point I wanted to address, which is Hardeen's does not overrule Wren, Johnson, Taylor, or King. And I don't think any justice's opinion in Jardine's endorses the idea that what the officers did in this case is prohibited by the Fourth Amendment. In footnote four of Justice Scalia's opinion, he said that, quote, the mere purpose of discovering information in the course of engaging in that permitted conduct, by which he had just said approaching a home in order to speak with the occupant, does not cause it to violate the Fourth Amendment. Justice Kagan, in her concurrence, said if the officers can smell drugs coming from a house, they can use that information. A human sniff is not a search. We can all agree. And in keeping with what Justice Kagan just said, Justice Alito, in his dissent, joined by Chief Justice Roberts, Justice Kennedy, and Justice Breyer said, a police officer who approaches the front door of a house in accordance with the limitations already discussed may gather evidence by means other than talking. The officer may observe items in plain view and may smell odors coming from the house. So every member of the Supreme Court endorsed the idea that what the officers did in this case is permitted under the Fourth Amendment. All right. Thank you, Mr. Cook. Mr. Hobbs, I note your court appointed, and I want to express the appreciation of the court for that service. It's very important to our system. You did a very nice job. And we'll come down to Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Paula Xinis